

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

Honorable Ben J. Dean
District Attorney
Breckenridge, Texas

Dear Sir:

Opinion No. O-2942
Re: Is Stephens County authorized to
carry the four mentioned funds in
one account?, and related questions.

Your recent request for an opinion of this Department on the questions as are herein stated has been received.

Your letter reads in part as follows:

"The First National Bank in Breckenridge is the county depository for funds of Stephens County, and at the present time is carrying an overdraft for the county in the sum of $4,547.66.

"Stephens County maintains an account in the depository wherein the Jury Fund, Road and Bridge Fund, General, and Courthouse and Jail Fund are carried in one account. When warrants are issued on this account they are drawn for one of these four purposes and are cashed indiscriminately out of this fund. In other words, as long as there is any money in this combined fund, all warrants drawn are cashed, which results in cashing warrants drawn on one account from funds to the credit of another account.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Ben J. Dean, Page 2

"At the present time the Road and Bridge Fund is overdrawn in the sum of $30,595.87, which is composed of the overdraft and the balance from the Jury Fund, General Fund, and Courthouse and Jail Fund. In other words, the Road and Bridge Fund owes the Jury Fund, General Fund, and courthouse and Jail Fund and overdraft of the amount of $30,595.87.

"The normal motor vehicle license fees coming to Stephens County annually are in a sum slightly in excess of $50,000.00, which will normally be paid in full by the end of April, 1941.

"It is proposed that the Commissioners Court enter an order reciting the facts above enumerated, or so much thereof as may be pertinent to an understanding of the situation, and providing that time warrants to the extent of $50,000.00 be issued, payable not later than May 1, 1941, and payable out of the motor vehicle license tax money coming to Stephens County prior to that date.

". . . .

"I should like to ask the following questions:

"(a) Is Stephens County authorized to carry the four above funds in one account?

"(b) Is the depository authorized to pay a check drawn on the Road and Bridge Fund when the Road and Bridge Fund is exhausted and payment has to be made from moneys allocable to the other three funds?

"(c) If the depository is authorized to make such payment, is the county authorized to transact business in this way, or would this be a violation of the law with reference to transferring indirectly constitutional funds?

"(d) Does the county have power to issue warrants and pledge the motor vehicle license fees in payment of same?

"(e) If the county obligates itself to pay the sum of $50,000.00 to the bank at this time, would the motor vehicle license fees due between now and May 1st,

Honorable Ben J. Dean, Page 3

next year, be considered 'current funds' from which such obligation could be paid?

"(f) If the county can lawfully borrow $50,000 and pledge the motor vehicle license fees receivable prior to May 1, 1941, either by the issuance of warrants or by direct obligation, should it out of this pay back to the General Fund, the Jury Fund, and Courthouse and Jail Fund the amount from these funds that has been used by the Road and Bridge Fund?"

Section 9, Article VIII of the Texas Constitution prescribes the maximum rate of taxes for general purposes, for roads and bridges, for juries, and for permanent improvements respectively. The money arising from taxes levied and collected from each of the above enumerated purposes are constitutional funds.

The commissioners' court has no authority to transfer money from one to another constitutional fund, or to expend, for one purpose, tax money raised ostensibly for another purpose. The immediate purpose of the provision is to limit the amount of taxes that may be raised for these several purposes, respectively, and it is also designed to inhibit excessive expenditures for any of such purposes and to require that any and all moneys raised by taxation for any purpose shall be applied to that particular purpose and no other. Carrol V. Williams, 202 S. W. 504; Ault v. Hill County, 116 S. W. 359; Tex. Jur. Vol. 11, p. 609-10-11; Henderson v. Burk, 262 S. W. 94.

Article 6675a-10, Vernon's Annotated Civil Statutes, provides in part that:

"On Monday of each week each county tax collector shall deposit in the county depository of his county to the credit of the county road and bridge fund an amount equal to one hundred (100%) percent of net collections made hereunder during the preceding week until the amount so deposited for the current calendar year shall have reached a total sum of fifty thousand ($50,000) dollars.

". . . None of the moneys so placed to the credit of the road and bridge fund of the county shall be used to pay the salary or compensation of any county

Honorable Ben J. Dean, Page 4

judge or county commissioner, but all said money
shall be used for the construction and maintenance
of lateral roads and such county under the supervi-
sion of the county engineer, if there be one, and if
there is no such engineer, then the county commissioners'
court shall have the authority to command the services
of the division engineer of the State Highway Depart-
ment for the purpose of supervising the construction
and surveying of lateral roads in their respective
counties. All funds allocated to the counties by the
provisions of this Act (Articles 6675a-1 to 6675a-14;
P. C. Article 807a) may be used by the counties in the
payment of obligations, if any, issued and incurred in
the construction or improvement of all roads, including
State highways of such counties and districts therein;
or the improvements of the roads comprising the county
road system."

The above mentioned statute expressly provides how
license fees coming to a county shall be expended.

It has long been held by the courts of this State
that the commissioners' courts have no powers or duties except
those which are clearly set forth and defined in the Constitu-
tion and statutes of the State or necessarily implied there-
from.

It was held in our Opinion No. O-937 that the commis-
sioners' court did not have the authority to transfer funds
from the road and bridge fund to the general fund. It is
further stated in said opinion that "the commissioners' court
is not authorized to transfer any moneys from one constitu-
tional fund into another. Such transfer, if made, would con-
stitute a diversion of such funds and be invalid."

The Supreme Court of this State has clearly drawn a
distinction between constitutional and statutory funds, hold-
ing that the commissioners' court, under Article 1630, Vernon's
Annotated Civil Statutes, is not authorized to direct a trans-
fer from one constitutional fund of money received from taxes
levied ostensibly for one purpose into another fund or expend
for another and distinct purpose. This authority granted in
said statute was therefore held to apply only to statutory
funds and the commissioners' court is authorized to make only
such transfers of funds as by statute are specifically enumer-
ated. Carroll v. Williams, supra.

Honorable Ben J. Dean, Page 5

Article 2554, V.A.C.S. provides in part that:

"It shall be the duty of the county treasurer upon the presentation to him of any warrant, check, voucher, or order drawn by the proper authority, if there be funds sufficient for the payment thereof on deposit in the account against which such warrant is drawn, to endorse upon the face of such instrument his order to pay the same to the payl'o named therein and to charge the same on his books to the fund upon which it is draw. . . . It shall be the duty of such depository to make a detailed monthly statement to the commissioners' court at each regular term of said court showing the daily balances to the credit of each of the funds on deposit. . . ."

Article 1610, V.A.C.S. provides:

"The accounts of the tax collector shall be kept as follows: A separate account shall be kept for each separate fund that may be upon the tax rolls; each account shall state the name of the collector, the character of the fund entered therein, and the year for which the same is assessed; and the taxes assessed for each year shall be kept separate and distinct."

Considering the above mentioned statutes together with Articles 1634, 1636, 7261, 2549, V. A. C. S., and other pertinent statutes, it is apparent that it is contemplated that a separate account shall be kept for each separate fund upon the tax rolls.

An opinion of this department (Biennial Report of the Attorney General, 1912--1914, page 165) holds in effect that the county depository must keep a separate account for each fund.

In view of the foregoing authorities we answer your questions as follows:

Stephens County is not authorized to carry the jury fund, road and bridge fund, general fund, and courthouse and jail fund in one account.

Honorable Ben J. Dean, Page 6

The county depository is not authorized to pay a check drawn on the road and bridge fund when the road and bridge fund is exhausted; when payment has to be made from moneys allocated to the other three funds above mentioned the payment of a check drawn on the road and bridge fund would be a diversion of said funds.

The answer to the second question as stated above necessarily answers your third question.

The county does not have power to issue the warrants mentioned in your inquiry and pledge the motor vehicle license fees in payment of said warrants.

The license fees due between now and May 1, 1941, can not be considered as current funds from which to pay the sum of $50,000 above mentioned in the event the county obligates itself to pay such sum at this time. The license fees must be expended in the manner as set out by Article 6675a-10.

In answer to your last question, you are respectfully advised that the county cannot lawfully borrow the $50,000 above mentioned and pledge the motor vehicle license fees received prior to May 1, 1941, for the payment thereof.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

AW:BBB

APPROVED DEC 11, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS